**PRELIMINARY (DRAFT SUMMARY) REPLY**
**REQUEST FOR SEALING AND PROTECTIVE ORDERS**
**ATTORNEY AFFIRMATION**
**MEMORANDUM OF LAW**
**STATUS REPORT**

In the interests of expedience, I presume all parties' familiarity with issues pertaining to the pending Reply to the Government's opposition to my request for leave to file a document under seal. I submit this to amplify my notice to and request of the Court made yesterday, April 27, 2022, that for unexpected highly relevant developments at the Supreme Court, first in the last 25 days, most recently yesterday, when I first found out because of a public filing there, not only in my clients' interests but in the interests of this Court and the interests of the polity it represents (the same polity defendant United States represents, if it will remember, plus of course Felix Sater's uncompensated victims), will all benefit from brief additional time.

I do not intend this as an operative document other than asking for a date reset, but so the Court can have no question why this is such a serious matter as soaked this up, I have extracted a few points from what I have spent so long preparing to file so the Court an appreciate what it has not I think had any idea of before.

The government has dragged this Court into a *trifecta of fraud* the like of which is unknown to me despite all my study. That there was fraud on the country especially in view of the 2016 election is not disputable, *possibly* except as to scienter, and it will be shown soon enough collaterally and is not something for this Court to be preoccupied with directly. And there is fraud on this Court and the Supreme Court, the former by the government's attempt to have the case thrown out for lack of jurisdiction because, the government told this Court, "Judge Glasser sealed Sater's sentencing," the latter by its successful attempt in having the Supreme Court throw out my cert petition because. the government told that court, "Judge Glasser held Sater's sentencing in open court, and details of his cooperation were read aloud there."

Neither statement is true. Both are false And, the last, immediately preceding two sentences cannot either of them be true; it would be impossible. Or would it? Does it violate Aristotelian non-contradiction?

If he were alive today, Aristotle would be…not surprised. Neither am I, sadly. Neither should this Court be; respectfully, I did warn Your Honor years ago that this was coming. Yes, indeed, I did.

"Sealed" as used in this context by the EDNY, SDNY, Second Circuit, and DOJ has no meaning and as it has no meaning it may at once have arbitrary many meanings. Nor is it ontologically capable of being classified true or false; it cannot be a member of either set because those sets mutually exclusive, aka complementary and presuppose crisp classification, not what exists in those courts and USAOs, perhaps best described as *Calvinball* classification, such as "sealed, by other than court order"; "hidden but not sealed"; "sealed by court order that doesn't exist and isn't actually docketed but is implied because we just hid it but got caught so best we can do is dress it up"; and a favorite, "It was in open court subject to a sealing order" and its close cousin, "the proceeding was held in open court, but the case was sealed 'on the whole'.") Challenge me if you think I'm making this up.

How, why? That one is easy. What the EDNY/DOJ wanted to do was (a) make deals with cooperators by paying them for their cooperation and testimony, and yes it's a felony to pay a witness to testify, and the statute says so, no exceptions, but when a 10th Circuit panel, apparently fully literate, read the plain language of the statute that way and threw out a conviction for the government's promise of leniency to a cooperator in return

for, inter alia, testimony, even truthful, the circuit swung into action en banc to reverse that, and soon nearly every federal court in the country joined in, so now a statute that says, basically, "anyone who pays a witness to testify commits a crime" has been held to be interpreted as "anyone who pays a witness to testify commits a crime, except 'anyone' does not include a federal prosecutor." How did those courts rewrite those statutes for Congress? Oh, they followed the 10th and said, "You know what, Congress forgot to add that part about "anyone" not meaning federal prosecutors, they forgot, but had they thought of it they would have, in fact, they probably thought it was so obviously meant to be read as if it said it, why not save the ink, the scansion is better with the dactyls." OK, I'm making that last up. But only to keep interest.

In passing, I might mention what the Court may have noted: First, if cooperator testimony was so important that they would intellectually corrupt themselves, what does that suggest will keep happening year over year, that it will get more and more important and more and more corrupt?

And having said that, I'm obligated for my own safety to add that this is a bad case of *clanging silence doctrine*. What's that? About 30 years ago the Second Circuit, home of the noble financial and banking industries that are so honest not one executive has ever been prosecuted for all the fraud in the last 20 or so years, which tells you something (that there lawyers are better than the government's and so can negotiate fines instead of prosecution so the shareholders pay, it tells that), decided that while the RICO statute did provide a civil cause of action for any violation of RICO which produced causal injury, to use it against fine, upstanding firms like, it cited as an exemplar, E.F. Hutton, was disgraceful; clearly Congress had meant to write in a requirement that there had to have been a criminal conviction first as a condition precedent to civil liability, but the committees drafting it had just forgot to put one in there, so the Second Circuit would fix it for them, there was no question, it was a moral imperative to do so made clear by the *clanging silence of legislative inaction*. No word whether those bells were speaking in English or French, and if the latter whether they were also advising the Second Circuit to save France.

When it got to the Supreme Court, it was shot down with the admonition that courts do not rewrite statutes to help Congress better write what they flubbed, "*clanging silence or otherwise.*"

Also, I should mention that as I recall within a month white shoe E.F. Hutton was charged with several thousand acts of mail fraud for money-laundering for the Patriarca family, mail fraud of course a RICO predicate. You don't see them around much anymore, nor their commercials that "When Hutton talks…" Guess why.

I must be a good lawyer because I "got" the courts to do it all again: When my clients sued Sater in RICO, it was thrown out on grounds including, first, I had written some allegations in passive voice (I'm not kidding) and because the RICO statute could not possibly have been meant to allow suit against by just anyone against someone like Sater, though he had been convicted, no, the statute must have been meant by Congress to provide that no plaintiff could sue unless he had been named as a victim in the criminal charging instrument, the reasoning that Congress "must have" meant to include that but from the Congressional Record it seemed that the statute in question (the "conviction exception") had been done in a hurry, was a "rush job," and no doubt Congress had intended to include that language so why not rewrite the RICO statute for them. You cannot make this up.

So far, only one (last I checked) court in the SDNY has admitted that the statute must be interpreted like that so that DOJ can negotiate charging language with defense counsel to preclude civil suits by omitting any names of victims as a bargaining chip in return for the defendant's cooperation. No, I'm not kidding. It says so.

To be fair, I should point out that the judge who dismissed the case against Sater did note that if she didn't rule as she did, "anyone who lost money in the market owning stocks Sater was manipulating could sue him," which she said couldn't be right because it would be too much for courts to handle, though she made no comment about how that's precisely what "fraud on the market" allows, which is curious as I believe she had been head or vice-head of an ABA division on corporation law; she said she had to rule that way in prudence, ironically just as Justice Scalia, writing for a unanimous Supreme Court in *Lexmark*, held "prudential standing" was never an authorized doctrine and thereafter disapproved. Reconsideration on that point was denied without explanation.

I apologize if it seems digression; it isn't. Your Honor must for the merits issues in this case, including the merits of procedural motions (not a contradiction) first be aware of what goes in in these cases, trying to make a cooperator civilly liable when the government is screaming as loud as it can that but for cooperators no one would ever get convicted (as opposed to convicted by purchased testimony all concede is very likely to be perjurious).

Semble if I were to ask Your Honor what "open court" means, among the responses I would expect would be, "you can go in and watch whatever court proceedings are in session whenever you want." It tends not to come up much in litigation because we all know it when we see it. There is, however, one case on point, one case in which a relatively significant court, the Supreme Court of Georgia, had occasion to define the concept.

At the federal level, while there is a constitutional right to indictment by grand jury in the case of serious crime, the constitutional text is silent on details. Fed. R. Crim. Pr. 6, which we can presume has the same force and effect as a pure statute (which means it comes under Supremacy), supplies the details. One such detail is that *a grand jury indictment must be handed up in open court*. For years federal courts would vacate indictments on motion of a defendant if he showed it had not been handed up in open court; but I believe in the 1980s, the federal judicial *zeitgeist* changed, and it is now considered subject to "harmless error" analysis.

This of course doesn't apply to states. 10 years ago a Georgia state court defendant, had his indictment vacated because it had not been handed up in open court, it was handed up in a courtroom where the public was apparently able to attend, but his lawyer couldn't because he was stopped at security at the only entrance allowed open and had to wait for a Marshal to escort him, then was not allowed in, the courtroom doors locked, till he proved to a Marshal at the door that he "had business" in there, by which time the hand-up had been done. The court agreed that in those circumstances that was not open court and the issue got to the Georgia Supreme Court, which in *State v. Brown* (2013) defined open court , at least for that purpose, its holding (as interpreted by the concurrence, without objection by the majority, and of course I am not citing it as binding precedent):

> [T]he Court is not holding that *any* barrier or delay that members of the general public face in gaining access to a courtroom to observe the return of an indictment prevents that proceeding from being "open to the public." Instead, consistent with *our* case law on the related, constitutional right of criminal defendants to a public trial, the question is whether the public was "denied access to the courtroom *without justification*," meaning that the court "failed in its obligation to take *reasonable measures* to accommodate public attendance."…Or as then-Judge Blackwell put this point in his opinion below:

> Only when a citizen is *unreasonably* prevented by courthouse officials from attending a court proceeding … because his admission to the courtroom is unreasonably refused altogether, unreasonably delayed for a time, or otherwise unreasonably hindered … can it be said that the proceeding is closed to the public..

May I assume that Your Honor concurs this is at least one reasonable expression of the definition, and so, if a federal Court deliberately holds a grand jury hand-up in an obscure courtroom you can reach only by tramping through puddles (I swore I would not ask if the Court thinks they could be considered wetlands, so I will not) in a 3rd lower level basement garage, like Mark Felt on his way to meet Woodstein, to an annex where only secret elevators requiring special passes can get to the courtroom, with the express purpose, as admitted by the presiding magistrate judge and the U.S. Attorney involved, of evading public knowledge or attendance while able to piously state that "it was in open court" because the doorknob wasn't locked, in a normal world that gets sanctioned into tomorrow and referred to Public Integrity? Is that open court, in other words? And what would Your Honor's reaction be to learn that it was the U.S. Attorney who asked the magistrate judge to find a way to hide it, and the judge herself who came up with the plan, which the AUSA's superior approved, and to learn that later, when that case had ended, the AUSA publicly bragged, in writing, that this was an example of how smart US prosecutors are because after all it was "open court," then bemoans that despite all this attempt to hide it, somehow the press and public found out anyway?

What does anyone think was going to happen to a criminal justice system whose upper-level persons hold this condescension to and disregard of the law, so full of self-righteousness that because they're doing God's work rules don't apply to them, how could they apply to self-anointed philosopher kings?

The other shoe…

The defendant being indicted was Paul Manafort. The sub-garage, the puddles, the secret security-coded elevators, all of it is as true as anyone wants to believe the US Attorney involved, who admitted it. His name was Andrew Weissman (it probably still is). The written admission setting forth all the above is in his biography, I excerpt from it in **Exhibit A**.

The superior he checked with and who signed off on it was, yes, Andrew Mueller.

I know I feel all warm and fuzzy about their attitudes and actions. Mr. Weissman is rather also famous as having been the head of the EDNY criminal division in the 1990s during the Sater years and having flipped Sater and even signed his cooperation agreement.

He's also rather a bit less famous for giving an interview to the Houston Chronicle in which he said, when asked to comment about a federal district judge who had sealed a courtroom for a sentencing without any notice to the public or opportunity to be heard, that at the time headed to be argued before the 5th Circuit:

> Andrew Weissman, a former U.S. prosecutor now in…practice in New York, called the closed sentencing "highly" unusual, particularly given the [public right of access to courts] "I've seen guilty pleas under seal. I'm not sure I've ever seen a sentencing under seal."

He's quoted in the February 24, 2010, *Houston Chronicle*, 15 weeks after Sater's sentencing; of course, he was no longer with DOJ by then, but he was again for a decade and he's "not sure he's ever seen a sentencing under seal?" What does that suggest, the man who ran the EDNY criminal division for a decade or so during the "mob on Wall Street" indictments and all other organized crime activities knows what could happen if a federal court ever held the entirety of a sentencing proceeding under seal; does it sound like he wants too much attention devoted to the issue? **Exhibit B**.

For decades, at least back to the 1970s and who knows before that, EDNY and SDNY trial courts have hidden criminal proceedings as suit them, including thousands, so far as we know, involving cooperators, almost

always their plea hearings, or close enough, and at least into the 1980s their sentencings, too. Obviously they don't all involve "wagon trains" through the dank underbelly (what a wonderful metaphor) of the court system like that sub-basement typifies, but the same concept, "it was open court because we didn't lock the door, though we scheduled it at a time and in a place where no one would ever find it; made sure not to calendar it so no one would find it; then disappeared it, wishing it into the cornfield so no one would know."

No, in those years, at least as admitted by the then-US Attorney, SDNY, and I am not making this garbage up, the Court will be able to see itself when I get everything uploaded (not at this time, it would be too much), the SDNY USAO said that as far as he was concerned (please prepare yourself), "A guilty plea and the sentence that follows it can be considered as extensions of grand jury proceedings, and so Rule 6 allows us to keep them all secret all the time." Amazingly, it gets better. How? He thought it was a good idea to add, and I am going from memory here as in all of this and I am not nearly infallible, "Cooperator safety? No, not at all. We don't ever take that into account, we have no reason to consider it as a risk." This was in or about 1981. **Exhibit C**.

An outraged Congress to demand investigation, and as there was then no Inspector General of the DOJ, it fell to GAO which found, roughly, that SDNY had 25 to 50 times as many secret cases as other districts they sampled. I know, right, I was all like, "No way," when I read that. Your Honor can read, it too. **Exhibit D**.

I presume no one believes they ever stopped, or that it was limited to one side of the East River. After all, the problem can be traced back over 150 years, when judges were concealing convictions for favored defendants so that they could avoid having to impose Congressionally mandated sentencing provisions (like restitution is mandatory today), not by sealing them, but by burying Judgment and Commitment orders in chambers with the promise that so long as the convicted defendant behaved himself, none would know of the conviction. That one hit the Supreme Court in 1916 as *Ex Parte United States*, and it is too important to cover here in short form. Suffice it to say the Wilson administration came within a day of filing a write before the Supreme Court to charge and try a sitting federal judge, one Killits (hence the "Killits Case"), for failure to obey their mandate to stop.

This became a real problem starting in the 1990s and in particular in 2004 because crime victims' rights statutes coming into force required prosecutors and courts to respect victim rights, and everyone, every court, everywhere to reach the issue has agreed that while it's unclear and there is a circuit split whether those rights attach during pre-charge investigation, at the latest those rights, including the right to be informed every step of the way about a criminal case, vest in victims no later than the hand-up, the beginning of formal prosecution.

Does the Court see the dilemma? I have no doubt. You can't seal it, it's almost never legal to do that (that's true of pleas more than of sentencings, hence Weissman's coyness), how do you justify not dealing with victims, other than saying, screw them, they'll never know, Latham isn't going to pay me 7 figures for being a good guy.

Next, I have the transcribed Congressional testimony of one of the most senior former EDNY criminal prosecutors in the "Sater" years that they hate victims, that in cooperator cases victims can screw things up but good, but as it's almost impossible to legally seal a plea or sentencing, so instead they just hold them in an EDNY annex in The Grand Duchy of Fenwick at 4AM (figuratively), with no public record of it before or after.

His name was James Orenstein, and also probably still is. When he gave that testimony in opposition to Congressional enactment of victims' rights laws, he had just stepped down from a 10-year position as, I believe, Deputy Head of the criminal division in the EDNY, a direct report to Weissman. His testimony is self-explanatory and is in **Exhibit E**. Shortly thereafter he was appointed a federal magistrate in, yes, the EDNY.

And two New York newspapers of record reported a few years ago that their reporters had accidentally wandered into a courtroom in one of those situations where no one was supposed to know and the judge, after ruling that the government had made no case to seal (but remember that's said to be window dressing, see above, the real point is hiding it, satisfactory constitutional formality not needed), whereupon the AUSA approached, according to the newspapers advised the judge that there were reporters there, and the judge suddenly decided there *was* reason to close the courtroom and had the reporters ejected, no opportunity to be heard. So they report.

(To be completed overnight to include the most recent development in SCOTUS and all Exhibits)