**UNITED STATES COURT OF FEDERAL CLAIMS**
**E/O Gottdiener et al. v. United States, 15-1245**

### LETTER MOTION FOR JUDICIAL NOTICE AND ADMISSION INTO EVIDENCE

I ask the Court indulge epistolary form here. This **is** a judicial document seeking Article I relief, RCFC § 7. As there should be no basis to oppose the relief, though its consequence may be devastating, I want to upload it fast in fairness to the government and court so all know what is coming as soon as I finish rewriting the rest to focus on jurisdiction if the Court wishes that be a topic of a status or "pre-motion" conference.

**\*\*\*\*\***

No one likes seeing that the faith in a system of which he's been part is misplaced, typically blaming the messenger for showing a problem he'd rather put off, a married man blaming you for divorce because you told him that his wife cheated, he already likely aware but suppressing it till you made it impossible to avoid dealing with it.

*This* filing is attenuated, limited to what I can <u>*prove*</u>, not what I can *allege*, because if prove means establish to neutral trier of fact at a certain evidentiary level, I can *prove* intrinsic and extrinsic fraud at an *impeachable* offense level. That's not only my opinion, though I would rely on it anyway if it were, but a relatively recent opinion of the House Committee of the Judiciary, in a substantially identical factual. But my clients didn't hire me to impeach, but to win. The only way to meet my duty to them, the Court, and the law is seek a writ *Fiat Justitia Ruat Caelum*: *Let Right Be Done, Though the Heavens Fall,* a claim against the crown dating to the Glorious Revolution by which subjects might sue the crown in its courts by its waiver of sovereign immunity *if a subject's property had come into the crown's possession without legal right and he sought it back*. The crown tasked the petition to a court, often Exchequer, with a writ *Fiat Justitia,* directing the judges *to do what was right*. Later, the task of deciding to issue fell to the English attorney general.

***Now this task falls to Your Honor***, and what my clients ask of you is in a modern sense really little different from what Parliament asked of Charles I in 1628. Indeed, it still sounds like what we do here when we say *the government has the plaintiff's money in its pocket without right.* As I have written before, *Chisholm v. United States*, while taught in 11th Amendment contexts, recites the history of the writ in a case of state failure to pay for goods, the issue where a merchant may sue a state for payment for Revolutionary War supplies had.

Terrence Rattigan's play "The Winslow Boy," tells of the Archer-Shee case, a boy expelled from a Royal Naval Academy prep school without due process on allegation of theft; the only way former AG Sir Robert Morton, can right the wrong is to claim a contract between the boy's father and crown for tutelage in return for service impliedly

covenanted due process would lie, merging into it the "due process plus" illegal exaction of US law. In tears when the petition is granted and the government concedes, he says, as will I, *because **right** was done, it is easy to do justice, much harder to do **right***.

### TALENT HITS A TARGET NO ONE ELSE CAN HIT; GENIUS HITS A TARGET NO ONE ELSE CAN *SEE*.

Einstein was due at a reception but his tux hadn't come. He wondered: The car with his tux is going west; earth rotating west; revolving about the sun in its own orbit; the solar system moving another way; in what direction were his pants moving? All night he thought how a simple thing may present a most fascinating idea as he answered questions of interviewers demanding he teach them in minutes in short sentences what it had taken him a lifetime to see.

As in physics, in pursuit of justice, some individuals reveal remarkable attributes that set them apart from the ordinary, exceptional qualities granting them capacities to perceive and comprehend what remains unseen by others.

WWII ace George Beurling is an example of vision and perception beyond ordinary, an ability to see and target enemy aircraft from vast distances. His acuity let him perceive minute details to anticipate adversaries' movement beyond normal limits, so letting him see opportunities and threats that eluded others. So phenomenal was his ability that, credited with 31 kills, he downed hundreds. Why? He saw where enemies *would* be and shot there, not at where they *were*. His plane's nose camera activated when he pulled the trigger so the films made it seem he was firing into empty space, he firing outside their field of view as he could see it was, or would be, where to aim.

There are others gifted with the ability to see past the confines of the present, The legal profession demands the capacity to perceive and understand beyond the obvious. Lawyers must recognize subtle nuance, hidden truth, and potential ramifications beneath the surface. As Beurling saw not where things were, but where they would be to see the best times to strike, lawyers with that skill see strategies, arguments, and evidence that will yield the best outcome for clients.

It is hard to be like this. Newton's exceptional intellect and revolutionary theories drew resentment, animosity, and envy from those who understandably felt threatened by his extraordinary ability to challenge paradigm, their feelings manifesting in their attempts to discredit him and his achievements. Yet he was steadfast.

Howard Roark, protagonist of "The Fountainhead," embodies the struggles of the visionaries in times intolerant of genius. Unwavering commitment to his principles estranged him from contemporaries; belief in his genius engendered the envy of small men who, in fear of being exposed as intellectually inferior, belittled his work and vision. He gave their words no weight, knowing that twin demons of mediocrity and

2

envy haunt the minds of all incapable of comprehending brilliance. "I am an architect. I know what will come of a thing by the way it was built," he said, testament to the visionary nature of all with ability to foresee consequences of choice and = practice.

I am gifted with foresight, to see ahead, fire at what seems emptiness, see the unseen, anticipate a future eluding others, navigate complex proceedings by an interconnectedness of events and ripple effects to shape the course of clients' legal journeys. That insight will play as much a role in this proceeding as skill. One wrote of me long ago, "Alone in a boat, able to navigate harsh sea by stars only you see, walking a street and floating over it in transcendence." The preceding is not narcissism and will be terribly important going forward. If I hadn't been like this, my clients, this Court, all would be headed for disaster. We may be anyway, but when I go to a higher court to justify my life, I will argue, *I was that I was, what I was made to be. It will not only sound good, it will damned well have the added benefit of being true.*

As is all else I write here to my best knowledge and ability, but note that most such assertion of fact here is mere contextual background, not material to deciding to grant the relief requested, at risk of perjury, 28 USC § 1746.

### "IF YOU WANT TO TOPPLE A DEMOCRACY, TAKE OVER THE COURTS." WHAT IF THE COURTS ARE TAKING OVER, WITH THE DOJ? BY GRANTING THIS PETITION THE COURT MAY START TO ARREST OUR MISSION CREEP INTO TYRANNY

A "mission creep into tyranny" refers to how government expands control over its citizens until it dominates their lives, suppressing dissent. The mission may not have been tyranny when it began but will have become so over time by pretext of protecting common good. It always involves erosion of civil liberties and human rights by the manipulation of opinion and information, indoctrination of ideology, surveillance andcensorship, enforcement of conformity and obedience, so is a threat to freedom, democracy, and dignity, begetting violence, oppression, and injustice. It often begins in a *legal phase*, supplanting and sweeping away legal, social, and political tradition.

*But I am not here to judge;* **Your Honor is**. I am here to persuade by truth, by *evidence* and *argument*. There's a lot of ruin in a nation. I may not live to see it, if it comes. But, as I see things other people don't, can't, or won't, I can tell you in some sense it's here already. It doesn't make me right all the time. *It does make me close most of the time*. I ask only chance to prove it, for all our sakes. If Your Honor will ask the government to stand and deliver in open court (*real* open court) defense of its motion to dismiss for lack of jurisdiction. Unless it would humiliate itself, it can't.

My argument is this. We're all responsible in our own way for taking a good idea, the Framers' Enlightenment view of a republic, and making it a toxic waste of fraud and stupidity on its way to decimating American life as we know it, or think we do.

Anyone who knows me knows I have no problem telling someone they're wrong, but for the first time, it's not fun. Ours is an era of fraud. Not just in business, but government, education, religion, food, medicine, even baseball. What bothers me isn't that fraud is not nice. It's that for 6,000 years the short-sighted thinking of fraud never worked. People got caught. When did we forget? We were better than this. The fact that we're not anymore doesn't make me feel right. It makes me feel sad because as fun as it is to watch the pompous be proven wildly wrong, I know that at the end of the day, average people like my clients are going to be the ones who have to pay for all this. They always are. *But not this time*, if I have any say.

I will of course explain why the above is relevant to disposition of the government's pending § 12(b)(1) motions to dismiss; it is, which is frightening, because it tells us what the government is thinking, which is equally frightening. I could use other words than frightening. I could use other words than thinking, too, as calling it such offends.

If this were structured as a motion, here would be a "grabber" lede. In this form I don't have to do that and prefer not to for two reasons. I am not writing for media, and because of Hannah Arendt. I did not just compare anyone to Nazis, quite the contrary, as the sum of what I have discovered is, yes, evil, but banal to the extreme as reflected in the *unremarkable* stupidity by which it is instrumented and till now got away with.

All Abrahamic religions share the tradition that one shall not kill. And we know that the shibboleth is properly translated as "one does not murder" instead of "kill" because we do kill when we must; we murder when we must not. Indeed, it is Hebraic tradition that even the state not take a life no matter how deserved, though what few know is that way back when you risked being stoned to death for wearing wool and linen together, which was never really a "thing," but if say you raped and killed a child, the state would try to find a close relative to serve as a Goel Haddam and execute you because of the moral-legal fiction that it was not a state execution the family taking vengeance, which was allowed, or at least accepted. Goel Haddam translates as "Blood Avenger," but "blood" means "family," not blood. Modern Israeli law analogizes the concept of a government prosecutor as the equivalent, or a defense counsel, and is really no so different from the private prosecution of crimes in medieval England.

My clients did not hire me to, nor would I expect any class certification to appoint me to, take vengeance on anyone. They hired me to *win*. And though I'll be thought naïve to believe it, in a case like this, where the United States is quite literally on the wrong side, I'm stupid enough to believe in what's written over the DOJ door, that the United States wins its case when justice is done in its courts, because that will only happen if and when my clients win at the same time. In fact, one reason this stretched out the last few weeks, is because I had to calm down enough to see this may be a better path, having been infuriated that the EDNY Grievance Committee, *ordering* things unsealed, has not *actually* unsealed one page in the 5 years since we asked.

4

And, it isn't my problem alone that incompetent and corrupt government lawyers get away with evil things and go to big law partnerships despite, indeed because, of it.

Kelly Moore, for example, who was an AUSA in the EDNY USAO prosecution group covering RICO cases for their criminal division while Sater was being investigated and prosecuted and wound up representing him in his sentencing (small world, isn't it) filed papers in a NY State Supreme Court case which went to the Second Department, in which her lawyer in her behalf referred to me in so many words as a disingenuous idiot (I'm never called genuous one; I suppose it's like never being called "gruntled") because I had accused her of fraud in representing in the cases that are predicates here that Sater's entire case had been sealed when that was not so, as Judge Glasser himself had told the US Supreme Court, that the sentencing had been in public open court. She told the NY court(s) in unsworn papers that it was open court, *but no one was allowed to enter the courtroom who had not been pre-authorized.*

If her clients and firm don't see her idiocy filing a document calling a sentencing "in open court but no one was let in not first authorized" without thinking, "What the ---?" we must conclude her clients really did get the lawyers they deserve and let it go.

There is a reason they wrote that. It's pathetic. And evil. Yes, it can be both. In their minds, what matters is not, was the proceeding in open court but, was the public actually there. *That* is the pathetic (moronic) part. I know this because in other parts of those documents they refer to me as an idiot for ignoring the question whether anyone ever came in because they noted no one ever did. Tonstant weader fwowed up.

I assure the Court and have no doubt it knows already that the definition of open court has been the same forever, which is simply that of a special case of the larger question, "*Did the government **publish** the information to the public?*" which includes, *inter alia*, disclosing it in open court or putting it in open court records or in open archives where in all such and other cases the issue is *not* whether anyone came but whether anyone *could* have come. If it was open to the public without Ms. Moore's pre-approval, a court proceeding was in open court and all said there upon its saying became public property, period, even if no one came, *as long as anyone could have*.

Your Honor will find in the next installment a ton of law on this point, most of it originating ironically in the Second Circuit on its way up to SCOTUS, all saying that if anyone *could* have attended or read it, that's it, it's public, don't let the door hit you on the way out." One sees what hubris and stupidity get you if you don't really get it. Or dishonesty, immorality, unethicality, and, yes, worse, and we all know what I mean.

I am still researching to the question whether fraudulently misstating a fact to the US Supreme Court to dissuade it from granting cert then stating basically the same in hidden ("sealed," not sealed) documents can be a waiver of jurisdictional objection here because it should be impossible to waive. What's most impressive here in this collection of "stupid lawyer tricks" is that we know the names of many persons at the

5

sentencing and depending on how lucky they feel about subornation, obstruction, or contempt let's see what they say under oath about whether it was open court or not. So far Judge Glasser says it was while Kelly Moore says it was not yet former AUSA Todd Kaminsky was there, independently filed papers stating it was open, **Exhibit B**, and Judge Glasser on the *ex parte* transcript which is **Exhibit A** "stares him in the face" and says he (and the others there) know it was open court *and know it was never sealed thereafter because none of them asked him to seal it*.

And US Attorney General Loretta Lynch who in sworn answers to questions from Senate Judiciary chairman Hatch during her ratification hearings said she can't comment on Sater's restitution because Judge Glasser sealed all information about it, then backtracked when confronted with the fact that he himself had said otherwise.

18 USC § 3551 is a statutory requirement that if no or less than full restitution is ordered, the sentencing court must state why on a record in open court in a "statement of reasons," which must be made public thereafter and kept there…trust me this just gets "better." Sater's cooperation agreement states he understands he faces a sentence of restitution of up to $60 million.

I am reminded of the *New Yorker* cartoon where an executive is on the phone while looking at his calendar and saying, "No, next Tuesday is no good. How about 'never,' does 'never' work for you?" In thinking that ordering him to pay $0 instead of $60 million would count as less than full restitution; remember that if Your Honor should look at the government's filing of Judge Glasser's statement of reasons, does Your Honor realize this is a document showing the government eating their own, actually filing in open court (a real one, *this* court) a statement of reasons that was never publicly available until 2012, as court records will confirm, though ostensibly again the sentencing was in open court; Your Honor gets the point.

But lest Your Honor doubt he understands (he does, trust me), Plaintiffs proffer in evidence another self-authenticating order, **Exhibit C**, again not only for the fact that those things were said by Judge Glasser on the record (and are docketed there), but for their truth as to reasons ("truth" as in what I can prove by *evidence*) why he never ordered restitution from Sater, because of numerosity. That is an actual exception.

Fortunately (for us), we obtained the actual records of all that went on beneath that, which is to say that when another of the *Coppa* co-conspirators appealed the order of restitution imposed on him, the Second Circuit remanded with instructions to do it over but correctly; whereupon after three months or so of hearings on the matter the government just didn't feel like doing it, from the transcripts we have, and so asked Judge Glasser to let it slide by entering a finding that there were too many victims, without explaining why even with the help of the CPAG, then a new NASD special unit created for just that and two other cases, they couldn't manage a loss computation for 300 persons? Seriously? Because they did in the other two cases…

Your Honor will find when I admit those documents as evidence, the ones about the computation, Judge Glasser refers to "hundreds" of victims. Not thousands, but hundreds. We will assert that as an evidentiary fact as well, for its truth, both that he thought the number was hundreds, and that it was.

Not to get ahead of myself, but this matters here because, as is clear by its papers, the government can't understand this or (more likely) can't admit it does understand, there are two kinds of CVRA rights in play here, (1) the right to restitution as provided by law (such would be provided by the MVRA in this case); and (2) a lot of other rights, such as the right to be informed about open court proceedings and so on.

And yes, though it respectfully ought be obvious, your honor is assured there's jurisdiction to take this in the context of jurisdictional discovery, which disaster they put themselves into without help from us. Believe it or not, there is a salient reason for all this, salient meaning "That's where the money is."

Now if I may, let me explain what is happening. Please however with all respect be aware this filing is but the first such in this case, now, *and only in the context of Plaintiff's opposition to one specific § 12(b)(1) objection, discussed immediately next.*

One of the § 12(b)(1) objections is that Judge Glasser sealed the records of the sentencing while deciding not to invite the victims to be heard there and you're stuck with that. You're not, the *argument* is stupid, but that is of no moment because the *factual* predicate on which it depends is false and so there is a disputed fact in a § 12(b)(1) motion which the government itself admits in its papers allows resort to extrinsic evidence (I believe it is clear that Plaintiffs' FAC asserts everywhere that to the extent documents or proceedings were hidden from the public, whatever methods and means were used to do so were not sealing, but rank if not unlawful concealment, the FAC of course pleading in the alternate between exaction and taking and further as the Court is aware the fact that something was unlawful as in unauthorized is not a per se removal from takings liability. As noted, this is not for the present.

We proffer **Exhibit A** in evidence ***for the truth of what Judge Glasser says therein, not just the fact that he said it***. I assume the Court will take it as self-authenticating, given its provenance on the Sater docket. May I recommend Your Honor first review the next two pages, which explain it all. For the absence of doubt, Plaintiffs submit this as a hearsay exception as a party (Judge Glasser) admission.

I will conclude this in two pages, again abbreviating it for the convenience of the Court, that it may decide what kind of status conference to hold, and when, possibly deciding it is best to make it also a pre-motion conference.

Once upon a time, in the 1930s, the precursor to Dunn & Bradstreet got itself sued for libel for something it said about a business run by two brothers. Venue was in the SDNY, presumably on diversity. The case was settled by a so-ordered agreement

that Bradstreet would not again publish anything about either brother or as well a group of eight other specified non-parties. Didn't matter, true or not, a cone of silence.

Thirty years later one brother finds he can't get credit without a D&B credit report and D&B says fine, get that order vacated, but the SDNY will not vacate it, so he takes it up to the Second Circuit, by appeal or writ, its unclear. The Second Circuit issues a remarkable (they got it right) that says the district court should have never issued the order because no federal court has the equity authority (equity jurisdiction is how they teach it now, if they even bother to) to enjoin the publication of truthful information fairly obtained, period. To be very clear, the court said that just as the 14th amendment prohibits state courts from enforcing racially restrictive covenants (*Kramer*), the First Amendment prohibits federal courts from enforcing comparable injunctions.

Of course it's true, but it's remarkable for overtly holding that such an injunction must necessarily be void, not merely voidable, *ab initio*, thus immune from collateral bar criminal contempt prosecution (as would have to be prior restraints of all kinds).

Fast forward 60 years, it's 2022, and someone (of thousands) who signed a consent decree with the SEC by which he agreed if he ever said he was actually innocent the agreement would be revoked and he'd face charges went to the very same Second Circuit confident that *Bradstreet* would save him. One imagines he wasn't before that court much because of what it decided a year ago:

Remembering *Bradstreet* was fully precedential, I'm sure that Your Honor is thinking, they convened *en banc* then…nope. Of course not. They just changed the decision, that is, the *ratio decidendi*. Don't raise the bridge, lower the water. Think it through: The SEC operates through forced settlements, thousands a year, all requiring *omerta* or you forfeit your deal. They depend on making deals like that to function. Why should one coerced to agree have a right to later criticize them? So how do we save this?

The Second Circuit held that none of us who had read *Bradstreet* really understood it, not in 60 years, because its holding was based not on the First Amendment limiting the equity authority of a court, but was based on the fact that there were 8 persons who were in the settlement agreement, two plaintiffs and eight others, those eight all strangers to the case, and *Bradstreet* had agreed not to publish anything about them, too, which meant those eight would have lost a benefit by losi, say, the ability to have a D&B rating, which would be illegal in equity, because no federal court can by decree diminish the rights of a non-party to a case. *Alemite*, remember, and all that followed.

So we're all on the same page here, the Second Circuit said, sheesh, we have 60 years of precedent that the First Amendment cabins remedial equity authority of a court, we can't go along, SEC enforcement depends on making deals, why not change it to say that it has always meant, and still does, that the equity authority of a court is cabined to enjoining those who have appeared before it, or their privies, so that's

8

what's the problem, district courts can't diminish by decree the rights of non-parties without notice to them and an opportunity of being heard.

Now, far be it from me to go along that the Second Circuit always gets it right. Not too long ago it issued an opinion that the All Writs Act allows a federal court to enjoin non-parties who are non-privies because it is a separate source of authority to issue injunctions. That is, Rule 65 is the "normal" source, while All Writs is the "fall-back" source. You want to enjoin a party or privy, Rule 65 is your ticket; anyone else, All Writs applies and that act has no provision cabining the equity authority to parties.

Fascinating. See, Plaintiffs think that Rule 65 is the FRCP codification, not abrogation, of the common law of equity as it existed in 1938. That means that *Alemite*, decided by the Second Circuit in 1930 and approved by the Supreme Court in 1934 in *Chase v. City of Norwalk*, were written by time-traveling jurists because the knew that years in the future, Rule 65 would cabin…Please. *Alemite* and *Chase* just like *Bradstreet* all were decided in the early 1930s all before Rule 65. And all, according to the Second Circuit or the Supreme Court, held that equity did not allow altering the rights of nonparties or non-privies without notice to them and opportunity to be heard.

I suppose one could say I'm implying they're using, and will try here to use, some version of the above to justify using secrecy by saying, "Well we issued orders in equity, called them sealing orders but whatever, might have called them Herman, and we did so "under" All Writs and not "under" Rule 65, not even realizing what it sounds like to say that the source of injunctive authority is a Rule, rather than Article III (for them), as it means All Writs trumps Fourth Amendment property rights and Fifth Amendment takings and due process rights, every one of those self-executing so not dependent on Congress' failure to issue statutes to restrict or expand them as it can't…Of course, I couldn't possibly have any *evidence* probative of this…Sure I do.

A month ago I asked my AI to analyze all cases by the Hon. Loretta Preska (SDNY) concerning the law of *prior restraint* and to compare it with all cases decided by federal district courts in the last 60 years discussing same and tell me was there enough data by which to tell if Judge Preskas analyses were by objective standards apparently sufficiently within the limits within which a court could not by itself be said to be showing an unconstitutionally high possibility of bias, the *Caperton* standard. For whatever reason, Judge Preska has not decided all that many so no conclusion of significance was possible if one uses the AI as an objective standard, and the few it did find it suggested were clearly within the mainstream of such analysis, as I agreed myself.

To bring this installment to a close, I ask the Court to take notice of the following publication in **reason.com**, a blog of mostly law professors (motly Prof. Volokh of UCLA, but others too) writing mostly on constitutional, mostly First Amendment, law.

> **From *G.W. v. Gannett Co., Inc.*, decided Dec. 29 by Judge Rosemary Connolly (Mass. Super. Ct.), but just posted on Westlaw [EDITED]**

Defendant media entity, asks the court to dismiss Plaintiff's complaint as it contends he has stated no plausible claim when he asks Defendant to remove cyber traces of two truthfully reported articles published in 2013. He contends two blotter entries published in Defendant's publications identify him as arrested and charged by local police on unrelated misdemeanors. He states that he was never prosecuted on those charges. Those matters were expunged or sealed on his criminal record. But the blotter reports linger, at least in cyber world. He does not dispute the accuracy of those reports at the time reported.

Plaintiff demands Defendant remove the narrative portion of the blotter in its reports because a Google search by a prospective employer can uncover this history, and it is statutorily prohibited from being divulged to that same employer if they requested a Criminal Activity Report before making Plaintiff an employment offer. In other words, as long as a search engine can find the links to the reports, an internet search can end run around the legislative protections intended for G.W., especially as it relates to his/her sealed and expunged criminal records. Plaintiff wants the court to order the Defendant to remove the narrative and links on the webpages with these police blotter reports….

The court is not unsympathetic to Plaintiff's wish to reset the narrative about past events nor unconcerned about potential collateral damage the old reports could have on his employment, housing or credit. ***Claim for relief must give way to the First Amendment. Full stop. Plaintiff cannot cite case or law to support his overbroad, overreaching remedy.*** Defendant cites an unassailable series of precedents to demonstrate the legal basis for its motion to dismiss. Defendant notes that its police blotter reports are protected by fair reporting privilege which protects published reports of arrest by police.

The statute governing expunged records does not govern what the press may or may not choose to publish. *See* M.G.L. 258D §7. This is not a case of defamation. The report from the blotter was factually accurate when reported. Subsequent events may have made them less relevant, but they were truthful. As the law cited by the Defendant reveals, the Supreme Court has afforded the press a wide, unfettered berth, when it publishes truthful information.

Not only is the law contrary to Plaintiff's position but as a matter of public policy, Plaintiff's position is on shakier grounds. What could add more fuel to calls of "fake news" or undermine fact-driven debates if erasing, modifying or whitewashing historical or factual events and statements is required if current events or sensibilities made past truth, inconvenient or uncomfortable?

Senator Moynihan said "[e]veryone is entitled to his own opinion but not to his own facts." Public discourse must be fueled by common verifiable facts.

Now if I may, would the Court please read the following article from the same source describing a decision Judge Preska issued two years ago, to her regret:

**EUGENE VOLOKH** | 12.30.2020 2:32 PM From Monday's order in *Allen v. Chanel, Inc.*, by Judge Loretta A. Preska:

Before the Court are submissions ... regarding the Order of August 21, 2020, that directed search engines and websites to remove materials discussing the [case] following the Court's sealing of the docket .... Also a motion to intervene by the Electronic Frontier Foundation. and Professor Volokh of UCLA Law.

In 2012, after termination of employment, Plaintiff sued Chanel, Inc. asserting claims for discrimination. The Court granted Chanel's motion for summary judgment and ruled for Chanel on its counterclaim for unjust enrichment.

*Plaintiff filed a motion to seal her case. stating that public availability of her case's docket through online search engines, and commentary on her case in online media, rendered difficult her attempt at employment. The Court sealed the docket in light of her difficulty. Days later the Court also directed websites hosting filings from the now-sealed docket, and materials discussing those filings, to remove those materials.* After receiving inquiries from non-parties following the Takedown Order, the Court invited comment from the non-parties as well as from Chanel.

*Duck Duck Go, Inc., which operates the fourth-largest search engine in the US,* argued the Order should be vacated (1) it could not be bound, FRCP 65; (2) it had no opportunity to be heard; (3) the First Amendment protected its right to publish information disclosed by the government (docket entries) and rights of websites to which it would point users.

*Free Law Project, which provides free, public, and permanent access to primary legal on the Internet for educational, charitable, and scientific purposes*, submitted it should not be bound by the Court's August 21, 2020 Order under FRCP 65 because it was a non-party that obtained the materials independently and had no opportunity to be heard, and the First Amendment protects its right to publish information lawfully obtained. Moreover, Free Law Project advocated that submissions in response to the Court's September 30 Order should be docketed and the entire docket unsealed.

On October 28, 2020, counsel for the EFF and Professor Volokh of UCLA Law filed a motion to intervene: " First Amendment accords presumption of public access to pleadings and other judicial documents that historically open to the press and public'; documents submitted to court for consideration in summary judgment motion are—as a matter of law—judicial documents to which presumption of access attaches, under common law and First Amendment. extending to "pretrial motions and documents submitted in *connection with them, and dockets" For sealing to be justified a court must make "specific, on record findings sealing* is necessary to preserve higher values."

Reconsidering, the Court finds Plaintiffs' interest in sealing cannot defeat the presumption of access that attaches to this docket and its filings. Her concerns about reputational harm or negative impact to her employment are not sufficient to counteract the public's First Amendment right to these court filings. Thee fact that the docket sheet and its filings have been public for years prior to the unsealing request is further dispositive.

*Accordingly, the Court must vacate the March 10, 2020 Order that sealed this case's docket. And as the Takedown Order was issued on the basis of the sealing order, the Court also vacates that*

Two points and this is done for the day. First, why can't the government make up its mind which of its frauds it's going with? By fraud, I assume reckless indifference

is sufficient, not bad faith, but this is not a motion for sanction, and I would not dream of challenging opposing counsel personally because while one can possibly assume she may have paid more attention to the disaster she was inhering, I don't know that and surely don't know enough to assert anything else.

No, I refer to the government's apparent inability to decide which of these three bases underlay it's denial of jurisdiction here, which are obviously mutually exclusive with respect to their factual allegations

(1) Judge Glasser sealed the sentencing proceeding records, but the proceeding itself was in open court; because of this, he never invited victims to attend that proceeding and never ordered restitution;

(2) The same, but his idea of open court was that he could exclude victims from the proceeding by not "opening it up" to them (hence, closing it to them only).

(3) Judge Glasser sealed the sentencing proceeding itself, the rest the same.

I should ask the Court to please review the next page, which condenses all of the government's salient §12(b)(1) objections; they all look alike because they are; they have in common that legal "argument," which I don't get anyway, "there is no subject matter jurisdiction here because Judge Glasser sentenced Sater in open court and then sealed the record of the proceedings" is conclusory swill, not reasoning. But if the Court would please look at the final page here, which follows the next, the Court will see those same (1), (2), (3) possibilities, I guess depending on how drunk one is when one reads them, are presented as § 12(b)(1) objections *factually* dependent on whether or not he sealed the sentencing itself or its records thereafter and that means, because we denied sealing was ever actually lawful sealing in our complaint, there is a fact dispute here, making it my burden to prove by preponderant evidence that the fact is not true (if he never sealed the sentencing or its record, the legal argument, such as it is, fails because it is predicated on the fact of sealing, not the falsity of it.

Wwe can deduce why they have three incompatible claims of lack of jurisdiction; there's no sealing order issued as they say there is as to sentence; and no docket indication thereof, and they're stuck, though still should have got their story straight.

There is more to follow that destroys their entire position and more, but I am pushed to physical tolerance limits as is and though I have other lawyers on the matter they cannot replace me. Accordingly, for now this motion requests notice of **Exhibits A, B, and C**, as proof of what was said, and the admission into evidence of those same, as proof that what was said therein is true, as set forth in argument here.

/s/ Frederick M. Oberlander

12

**The Government's § 12(b)(1) Jurisdictional Exceptions [sic]**

Page 8
- The court does not have jurisdiction to hear plaintiffs' claims as they seek to overturn decisions of Glasser. - The Gottdieners allege that the DOJ and EDNY colluded to conceal Sater's conviction and sen-tencing.

Page 9
- The Court lacks jurisdiction to review or reverse Glasser's decisions and cannot adjudicate claims under the federal criminal code.

Page 10
- Plaintiffs' claim they are not asking the court to overrule Glasser is contradicted by their request for the court to divine what the district court and Second Circuit would have done with respect to restitution.

Page 11
- Plaintiffs' assertion the Court is not asked to review merits of sealing decision wrong. - Court would have to opine if district court erred in not opening Sater's sentencing hearing to plaintiffs or putting restitu-tion in sentence to award compensation. – plaintiffs trying to rechar-acterize complaint as other than collateral attack on another court.

Page 12
- The Court can't review decisions made by district court in a criminal case. - The proper forum to challenge Glasser's decisions is Second Circuit. – In previous case the Circuit upheld sealing of Sater's records.

Page 13
- Court would need to review the court's judgment in Sater's criminal case to rule for plaintiffs. –Second Circuit upheld his decision to seal certain documents related to his case. - Orders by Judge Cogan et al support continued sealing and unsealing of documents related to it.

Page 14
- Suit is collateral attack on decision not to hold restitution proceed-ings. - forum to seek restitution is district court and Second Circuit; MVRA gives discretion to not award restitution in certain fraud cases.

Page 15
- CVRA provides victim's rights asserted in district court. - Gottdieners had opportunity to be heard, even if mistakenly believed no prosecu-tion ongoing. - Their complaint undermines their own allegation that secrecy of proceedings kept them from petitioning for restitution. - Congress vested jurisdiction for claims to assert victim's rights in dis-trict courts and regional circuits. - CVRA provides "nothing in this chapter" allows challenge to actions of DOJ prosecutors.

Page 16
- No jurisdiction to hear the claims as they allege wrongful conduct against specific government employees. -requested relief would require the court to hold that the SDNY provided inadequate forum for seeking relief against Sater. - Second Circuit's says restitution is compensatory, any amount paid victim per restitution is reduced by later damage recovery.

Page 17
- Sater, 35 FSupp3d 386, dismissed suit against Sater for failure to state claim. - Sater not convicted aiding and abetting securities fraud so could not fall in conviction exception to RICO - Court denied leave to amend as scope of conviction would not change and dismissed on ground aiding and abetting securities fraud could not be predicate act.

Page 18
- Gottdieners argue they were deprived of opportunity to seek com-pensa-tion from Sater as government allegedly hid nature of cases against him. - They already had opportunity to sue in federal court, but did not succeed as district court found he was not convicted of defrauding them. – This court does not have jurisdiction to hear the claims as it would require the court to scrutinize the actions of another tribunal. - Gottdieners assert the legal standard is different in civil RICO than required to obtain restitution in a criminal proceeding, do not provide any citation or explanation. - The district court also found their claims against. Sater had to be dismissed as they failed to plead their broker defrauded them based on Sater's actions.

Page 19
- Court has no jurisdiction over illegal exaction claim as the statutes relied on disclaim right to monetary relief against government. – They claim the government illegally exacted from them "a chose in action created by 18 U.S.C. § 3771. - Norman defines "illegal exaction" as money improperly paid, exacted, or taken from claimant in contraven-tion of the Constitution, a statute, or a regulation. – one must show statute or provision causing exaction gives remedy entailing return of money exacted. - statutes relied on do not provide a cause of ac-tion against the US, in fact state they do not provide a right to damages.

Page 20
- Duncan says the CVRA does not create a cause of action against US for damages. - Crocker says Tucker gives jurisdiction to recover exac-tions ille-gally imposed by officials, except where Congress put it else-where. - Con-gress vested jurisdiction re enforcement of sentencing statutes in District Courts, and Gottdieners should assert rights there.

Page 21
- The Gottdieners can petition a court of appeals for a writ of manda-mus if the district court denies the relief.

liability for any taking that resulted from such." *Id.* at 105.  Yet, there is no conceivable way that the Court could award plaintiffs monetary compensation for the alleged taking of their right to seek restitution without opining on whether the district court erred in not opening up Mr. Sater's sentencing hearing to plaintiffs or including an order of restitution in his sentence.  The Federal

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Kam-Almaz v. United States*, 682 F.3d 1364, 1367-68 (Fed. Cir. 2012) (same).

II.  **The Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Claims**

   A.  **The Court Does Not Possess Jurisdiction To Review Or Overturn District Court Rulings**

      1.  **This Court Does Not Possess Jurisdiction To Review The Decisions Of Judge Glasser**

The fundamental premise of the Gottdiener's complaint is that the Department of Justice, through the EDNY USAO, in concert with the Federal judiciary—in particular Judge Glasser—collaborated to conceal Felix Sater's conviction and sentencing, thereby taking or illegally exacting the plaintiffs' alleged right to seek restitution from Mr. Sater.  *See e.g.*, Complaint ¶¶ 41-51.  Though plaintiffs frame their complaint as independent causes of action for a taking or illegal exaction, the remedy they seek—damages for lost restitution—effectively asks this Court to reverse Judge Glasser's decision not to include restitution in Mr. Sater's sentence, and to seal the record of Mr. Sater's sentencing.  This is so because the relief plaintiffs seek is the relief Judge Glasser declined to impose.

The Court of Federal Claims does not possess jurisdiction to review Judge Glasser's decision not to include a restitution order and to seal the proceedings.  As the Court of Appeals for the Federal Circuit has definitively stated:  "Binding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court." *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1352 (Fed. Cir. 2015) (citing *Innovair Aviation Ltd. v. United States*, 632 F.3d 1336, 1343 (Fed. Cir. 2011); *Allustiarte*

8

---

```
13   refer to John Doe's cooperation with the government.  It may
14   be a proper interpretation of that order is no justification
15   for their remaining to be sealed.
16            The whole sealing issue arose only because when
17   Mr. Doe, when Jonathan Sach first filed that action, he filed
18   it under seal and then I didn't know, I didn't recall but I
19   had no doubt there was an order that I must have issued in
20   some form under some circumstances and when you turned it up,
21   where did you find that minute entry, that day sheet?  I had
22   no knowledge it ever existed which is why I made that
23   statement on the record at one point.  I couldn't find any
24   order directing that anything be sealed.
25            Interestingly enough, given 30 years of having
```

LEFT is pps 8,11 from MTD RIGHT is pps 16,17 EXH A

```
 1   responded and said "so ordered" I don't know how many times
 2   at the end of the plea, except you forgot to make that request
 3   at the sentencing, the government or defense counsel always
 4   says "Judge, I would like to make an application that this
 5   proceeding be sealed," and invariably I would say "so
 6   ordered," and I would generally add "I suppose you want a
 7   caveat to be made that a copy of the transcript may be made
 8   available to either party upon request?" Everybody nods and I
 9   say "so ordered."
10            That's precisely what happened because that day
11   sheet clearly indicates case sealed, transcript sealed and I
12   understand questionably said "so ordered." Otherwise it
13   wouldn't have said sealed.  That's why it happened, that order
14   back then, but I had no clue that that piece of paper was
```