```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - - X
 3
     UNITED STATES OF AMERICA      :     98-CR-01101
 4
         -against-                       U.S. Courthouse
 5                                 :     Brooklyn, New York
     FELIX SLATER
 6
             DEFENDANT,            :
 7                                       April 27th, 2011
     - - - - - - - - - - - - - - - X     3:00 o'clock p.m.
 8
                 TRANSCRIPT OF STATUS CONFERENCE
 9               BEFORE THE HONORABLE I. LEO GLASSER
                 UNITED STATES MAGISTRATE JUDGE
10


11
     APPEARANCES:
12
     For the Government:      LORETTA LYNCH
13                            United States Attorney
                              147 Pierrepont Street
14                            Brooklyn, New York  11201
                              BY:  TODD KAMINSKY
15                                 And
                                   LISA KRAMER
16                            Assistants U.S. Attorney


17
     For the Defendant:      MICHAEL BEYS
18                           NADER MOBARGHA
                             JASON BERLAND
19


20
     Court Reporter:         SHELDON SILVERMAN
21                           Official Court Reporter
                             225 Cadman Plaza East
22                           Brooklyn, New York 11201
                             (718) 613-2537
23


24

25   Proceedings recorded by mechanical stenography. Transcript
     Produced By Computer Aided Transcription.
```

SS        OCR        CM        CRR        CSR

1    THE COURT:  Given the Second Circuit's determination

2    that in effect I can deal with your March 17th letter, I

3    called you in because I think we ought to do that.  Before we

4    proceed any further, note your appearances for the record.

5    MR. KAMINSKY:  Todd Kaminsky and Lisa Kramer for the

6    United States.

7    MR. BEYS:  Michael Beys for defendant John Doe.

8    I'm joined by my partners Nader Mobargha and Jason Berland and

9    Mr. Doe is here as well.  I didn't invite Mr. Lerner because

10   he's not an appropriate party to this proceeding.  You

11   indicated that in your letter, what you refer to as the

12   intervenor.

13   MR. KAMINSKY:  There were two letters, the letter

14   that specifically delved into the documents itself was not

15   given to Mr. Lerner.

16   THE COURT:  What we have to do, if I'm going to

17   acknowledge the Second Circuit's determination that I have

18   authority to deal with this, we have to go through all the

19   docket entries and I'll permit each of you to give me your

20   views with respect to what may or may not be unsealed, what

21   should continue to be sealed.

22   I don't have those documents before me which I think

23   is something we should have.  Your chart simply provides a

24   summary of what's in there.  I don't know if that would be

25   enough.  I don't know whether the document makes any

1    reference.

2         MR. KAMINSKY:    Was it your intention at this date

3    during this conference to go through the documents?

4         THE COURT:    I think that's what we should do in

5    order to determine whether there's anything in them which

6    requires a continued sealing, I should think.

7         MR. BEYS:    Your Honor, at the appropriate time, I

8    would like to be heard more generally on whether anything

9    should be unsealed at this time.  I would like to make a

10   record.

11        MR. BEYS:    There are several reasons why I don't

12   think anything should be unsealed at this time.

13        First, certain of the entries that the government

14   has moved to unseal would indirectly reveal Mr. Doe's

15   cooperation; for example, a plea to an information.  The 11

16   year lag between a guilty plea and a sentencing as well as the

17   sentence imposed in light of the charges to which he pled.

18        The law is clear and the government's position is

19   clear that the defendant's cooperation should not be revealed.

20   It is our position that the government is misapplying the

21   facts of this case, respectfully, to the applicable law by

22   moving to unseal things which would do the same thing as just

23   saying he cooperated.

24        There's no dispute here and the government argued it

25   just two months ago before the Second Circuit that revealing

1   Mr. Doe's cooperation would pose a substantial risk of grave

2   danger.

3           Something happened ten days after the Second Circuit

4   argument.  Mr. Lerner brought to our attention the Eastern

5   District's press release which made it into the congressional

6   record which, in a footnote, indicated John Doe pled guilty to

7   racketeering and securities fraud.  The press release was

8   dated March 2nd, 2000.

9           We don't believe that ought to change the analysis

10  at this point, certainly doesn't change the law and the

11  application of the facts to the law.  If anything, it shows

12  that that disclosure to the public 11 years ago hasn't

13  amounted to anything.  There hasn't been any danger, not

14  because public dissemination of his cooperation wouldn't

15  present a danger, but because it was too long ago and, quite

16  frankly, no one in those criminal circles reads the

17  congressional record.

18          We believe that given there had been press reports,

19  notably a New York Times story on Mr. Doe in December of 2007,

20  that press report coupled with the current litigation in the

21  Southern District where we have a party to a litigation

22  seeking to expose Mr. Doe's conviction and, by extension

23  cooperation.  We think that would bring his past very much

24  into focus and the people that he cooperated against who your

25  Honor knows how dangerous they are, all out at liberty and I

1   will make a record who those people are, might have it in for

2   Mr. Doe who lives in the jurisdiction and has a family.

3         It's no small matter that Mr. Doe has spent a

4   fortune trying to put the genie back in the bottle ever since

5   May of 2010 when Mr. Roe first filed his case in the Southern

6   District.

7         Speaking of Mr. Roe, the context here does matter.

8   Your Honor knows some of the facts of what Mr. Roe did to

9   acquire the very information which he filed as an attachment

10   in his Southern District RICO action.  Your Honor may not have

11   the full picture and to the extent your Honor deems it

12   relevant, I would like to make a full record of all the stuff

13   we know now that he did.

14         Among other things, we are in the advanced stage of

15   settlement discussions with Mr. Josh Bernstein, the employee

16   of Mr. Doe's former employer, Bayrock Group, the person who

17   took the hard drive.  I apologize for the use of my word

18   "steal" because it may not be exactly accurate.

19         What is undisputed from our conversations with

20   Mr. Bernstein is Mr. Roe's clear improper and illegal actions,

21   using his client to benefit another client's case; illegally

22   taking documents and materials which he knew to be privileged,

23   taken under improper circumstances, confidential and sealed,

24   publicly disseminating them in violation of a court order as

25   your Honor very eloquently stated in a March 23rd order, just

Case 1:15-cv-01025-VJW Document 46-11 Filed 07/24/23 Page 6 of 25
Case 1:15-cv-01245-VJW Document 41-1 Filed 07/24/23 Page 6 of 25: 4062

1 a month ago and using them with the most improper motives.

2       Mr. Roe has taken -- first of all, he sued everyone

3 under the sun including the legitimate law firms that

4 represented the Bayrock Group in part of a scheme to extort

5 them out of tens of millions of dollars. He has one demand,

6 one written demand for 105 million dollars where the plan is

7 everybody get out of the way, we want to get to the law firms'

8 incorporated carriers who are going to be too embarrassed by

9 the thought of being associated with a convicted felon.

10       It's an implicit admission. The RICO action has no

11 merit but he's looking to get one hundred million dollars,

12 nuisance settlement by virtue of information and documents he

13 got llegitimately.

14       There's also, and I won't go into this in detail,

15 there's a slight possibility of additional ongoing cooperation

16 between Mr. Doe and either his office or potentially other

17 offices.

18       For all those reasons, we believe now is not the

19 time to unseal anything. The law is clear. It's a balancing

20 tests. Mr. Doe's compelling interest in keeping the docket

21 and all its entries sealed is compelling as everyone agrees.

22 Mr. Doe's interest in vindicating not the public's right of

23 access but his own right of access in order to promote a

24 litigation in the Southern District is weak, if it exists at

25 all.

1          For all those reasons, we don't believe now is the

2     time or these are the circumstances in which to unseal

3     anything.

4          THE COURT:   Mr. Kaminsky, do you want to respond?

5          MR. KAMINSKY:   No, only to say Mr. Base on behalf

6     Mr. Doe has eloquently and persistently made these arguments

7     to my office.  In responde, we've listened, considered them,

8     conducted threat assessment and at this time without saying

9     more, we're not prepared to say anything different about what

10    was then submitted to your Honor.  The only slight exception

11    to that is very recently Mr. Beys has presented to us a new

12    opportunity for Mr. Doe to aid the government in a criminal

13    investigation.  All I could say about that is something we're

14    going to look into immediately to see if it has any legs, if

15    you will.  At this point we don't know.

16         If your Honor would be inclined, for example, to

17    unseal anything by 5:00 o'clock today, we would ask you to

18    wait, but in general our position is not altered.

19         THE COURT:   Let me make two observations.  First,

20    Mr. Beys, your eloquent presentation informed me of nothing

21    that I really wasn't aware of except that your apology for

22    using the word "steal" causes me to wonder what is what the

23    appropriate word would have been.  I've heard some testimony

24    about that in a hearing I held but the testimony was rather

25    ambiguous, nothing about that testimony which informed me with

1  any degree of certainty as to how the documents, the offending

2  documents got into the hands of Bernstein.

3      The law is pretty clear that documents shouldn't be

4  sealed in perpetuity.  The law is pretty clear where the life

5  expectancy of a sealed document has expired; that the need for

6  its continued sealing no longer exists and the document should

7  be unsealed.

8      Now, there are many documents in that file which

9  remain under seal which without any doubt need not continue to

10 be sealed, the substitution of you which I think is still

11 under seal is not a document which requires sealing.

12     There are any number of documents like that, I'm

13 sure, which serve no useful or necessary purpose for either

14 your client or anybody else to remain sealed and would provide

15 no hint or clue of anything if those documents were unsealed.

16     Although the Second Circuit said I have the

17 jurisdiction to determine the question of whether something

18 should be sealed or unsealed, and I suppose construing that

19 language, if I have continuing jurisdiction I can decide to

20 exercise it or not.

21     Quite clearly, there are any number of documents in

22 that file which do not require continued sealing.  I wasn't

23 going to undertake to go through each one of those documents

24 by myself because I think even the law would require that the

25 parties directly interested in the sealing issue should be

Case 1:05-cv-01243-JGW Document 41-1 Filed 07/24/23 Page 9 of 25

1   given an opportunity to be heard. I didn't invite Mr. Lerner

2   here because he doesn't represent a party who has a

3   significant interest except a questionably illegitimate one

4   for having the documents remain to be sealed.

5         Notwithstanding your eloquent and unpersuasive view

6   that everything in that file should remain to be sealed, there

7   are documents that need not continue to be sealed.

8         If you're not prepared to deal with the list today,

9   I'll give you an opportunity to go through it and tell me what

10   it is you think absolutely remains to be sealed and not in the

11   public interest because the interest of Mr. Doe may, quite

12   appropriately, outweigh the public interest as it has for the

13   most part in connection with most of the documents that have

14   been sealed.

15         There's no question about the fact there are many

16   documents here that have absolutely no sealing justification

17   whatsoever and with respect to those, I intend to unseal them.

18         I don't know if you saw the last letter I got from

19   Mr. Lerner in response to my March 23rd order which simply

20   asks whether I have jurisdiction or not to continue to deal

21   with your March 17th letter and instead of simply telling me

22   he thinks I do or don't, a nine page letter, requesting, not

23   demanding this time, but requesting I correct virtually

24   everything in that order which was incorrect, misleading, so

25   on.

1        This transcript is going to be sealed for the

2    reasons which were provided by Mr. Beys and Mr. Kaminsky in

3    his last remarks concerning the possibility of ongoing that

4    the government will consider.  That portion of the transcript

5    quite clearly is justifiably sealed.  Everything else that you

6    have indicated to me is already known.  It's a matter of

7    pretty much public record but I'll deal item by item of the

8    items that have been sealed and make a determination whether

9    there's any continuing justification to continue to seal.

10   I'll not go through it now but I'll give you the opportunity

11   to go through it.

12        There are a number of items which come to mind,

13   substitution of counsel being one of them, of the many other

14   items which deal with scheduling matters.  They have no

15   significant purpose being sealed.

16        MR. BEYS:  Your Honor, we're less concerned with

17   documents that give, to use your Honor's words, no hint or

18   clue of Mr. Doe's cooperation.  In fact, just to correct the

19   record, I think the substitution of counsel is not under seal.

20   Your Honor denied the motion to seal.

21        We agree in and of itself a scheduling letter, to

22   adjourn sentence, the sentencing date, does not reveal his

23   cooperation.  The problem is the cumulative effect of 20 of

24   those letters over 11 years.  That does.  That gives more than

25   a hint or clue.

Case 1:15-cv-01245-VJW Document 41-1 Filed 07/24/23 Page 11 of 25
Case 1:05-cr-01035-JDW Document 144-1 Filed 12/05/18 Page 1 of 25: 4067

11

1        I didn't get a chance to actually make a record of

2   the people that Mr. Doe is most concerned about.  If you would

3   like me to, I can say quickly, all people your Honor has

4   sentenced, Eddie Garafolo, Gambino soldier, Sammy the Bull's

5   brother-in-law who threatened to kill Mr. Doe even before his

6   cooperation.

7        THE COURT:  Sammy threatened to kill his

8   brother-in-law at one point.

9        MR. BEYS:  Ernest Montavechi, Daniel persico, also

10   provided informations about Al Qaeda.

11        As the government has stated, Mr. Doe's cooperation

12   was of the depth and breath unseen in these parts.  There's no

13   way to know exactly where the threat is going to come from.

14        We would like, if your Honor is on the verge of

15   unsealing documents which in our estimation would give a hint

16   or clue to the underworld, would like at least the opportunity

17   to be heard, maybe with testimony under oath about how real

18   the threat is.

19        Also at the appropriate time Mr. Doe would like to

20   be heard.

21        If your Honor would like to know more about the

22   circumstances in which Mr. Bernstein turned over the hard

23   drive to Mr. Roe, I'm happy to put that on the record now.

24        THE COURT:   By all means.

25        MR. BEYS:   We've had several meetings with

1  Mr. Bernstein.  All this is under seal.  We have had

2  conversations with Mr. Bernstein in the context of the

3  litigation in the Southern District and we have been able to

4  confirm both through what he's told us and independently what

5  we believed on some level and prepared to credit it; that is,

6  that he had permission to take a backup of Bayrock's server

7  and all its electronic files, but there came a point shortly

8  after his termination where both Bayrock and Mr. Doe asked for

9  it back.  He knew he had it without permission and that came

10  across very clearly --

11      THE COURT:  Excuse me.  I thought I heard you say

12  he had permission for all those backup files.

13      MR. BEYS:  He had permission to take a backup, not

14  to keep it after his termination.  He was asked to return it.

15      He let that fact be known to Mr. Roe who he was

16  considering hiring in a lawsuit in Westchester County for

17  unreimbursed travel expenses and other claims via Jody Chris,

18  the plaintiff in the Southern District litigation.

19      THE COURT:  I don't have to know anything more than

20  that.  With respect to Bernstein, I heard a lot of testimony

21  at the hearing.  I have a fairly good sense as to what had

22  occurred.  I think I heard testimony about all that before.

23  It's not terribly important for me.

24      In any event --

25      MR. MOBARGHA:  Mr. Bernstein had permission to

Case 1:15-cv-01245-VJW   Document 40   Filed 12/05/19   Page 13 of 25   PageID #: 4069

1   create a backup, not to keep it.  I wanted to correct the

2   record on that one, or take it, subsequently take it.  That

3   has been established so far in our litigation, just to correct

4   the record.

5          MR. BEYS:  What your Honor has heard from Mr. Roe

6   which is lying under oath, all these documents came to him

7   unsolicited.  That's not true.  Yet, another reason we would

8   like more time is for that litigation to be resolved so we can

9   bring it to your Honor's attention.

10         THE COURT:  There was a point in time some months

11  ago when I was involved, which was one of the reasons I did

12  nothing with a motion or request that was before me.  There

13  was a stop order at some point which was in existence for a

14  number of months because I was told there was a likelihood, a

15  very significant likelihood that this whole matter where the

16  documents were, whether they're going to be returned, would be

17  resolved.

18         MR. BEYS:  That expired.  Settlement discussions

19  fell apart.  Mr. Doe put in a supplement brief on November

20  24th.

21         THE COURT:  With respect to your last request, I

22  obviously was not going to undertake to unseal anything

23  without giving each of you an opportunity to be heard, which

24  is why I called for this conference.  I had no intention of

25  going through each document and making a sua sponte

1    determination on my own whether they should or shouldn't be

2    unsealed.  That's the purpose of this meeting.  I want to give

3    you an opportunity to be heard with respect to it.

4            Now, what it is I would like you to do is you have

5    Mr. Kaminsky's list of documents which he believes should be

6    sealed or shouldn't be sealed or may be sealed or need not be

7    sealed and you've never commented on this, never responded to

8    this.  I'm giving you the opportunity to do it.

9            It may be there's a persuasive reason you can

10   advance or the government can, Mr. Kaminsky is speaking on

11   behalf of the government that is wrong, if so, I'll consider

12   it.

13           MR. KAMINSKY:   There's kind of a housekeeping

14   issue.  This list goes up and until the date of Mr. Doe's

15   sentence and slightly thereafter.  It ends with the statement

16   of reasons, but of course, we kind of enter a new phase when

17   the proceedings regarding Mr. Roe begin and there have been

18   numerous submissions, I don't think it would be improper to

19   characterize them as voluminous filings in this case.

20           THE COURT:   They are beginning to occupy half my

21   chambers.

22           MR. KAMINSKY:   What the government has not done yet

23   and it may have to do, for example, looking at a 30 page legal

24   filing to determine how one deals with that, it's kind of a

25   logistical issue in that the court's docket keeps growing but

Case 1:15-cv-01245-VJW Document 41-1 Filed 07/24/23 Page 15 of 25
Case 1:15-cr-01245-VM Document 246 Filed 11/01/15 Page 15 of 25    4071

15

1    the government doesn't get that in real time because it's a
2    sealed docket.  Therefore, it's difficult for the government
3    to know what every filing is, how it's organized.  Of course,
4    some of them are quite long and the government has yet to sit
5    down and make a determination, for example, in a legal brief
6    that may be 40 pages of what can or can't be unsealed.
7              I don't know what your Honor or Mr. Beys's feelings
8    are, but I want to note this chart, hopefully, will get us
9    some of the way there, but it isn't a full reckoning, if you
10   will, of the court's docket.
11             THE COURT:   Do you happen to have a copy of the
12   Second Circuit's last orders?
13             MR. BEYS:   Yes, your Honor, the one granting your
14   Honor jurisdiction?
15             THE COURT:   Yes.
16             (Pause.)
17             THE COURT:   I'm reading the Second Circuit order.
18   I don't suppose I'm going to get letters from three parties
19   now disagreeing as to what this order means and asking for the
20   Court of Appeals to clarify.
21             In any event, the district court retains
22   jurisdiction to decide the government's motion.  That's that
23   March 17th motion to unseal.  The court has jurisdiction.
24   This court has jurisdiction to decide the government's motion
25   to unseal as well as to decide any other pending or future

1   motions to unseal that would not result in the public

2   disclosure of docket entries, underlined documents that

3   reference John Doe's cooperation with the government.  That's

4   underlined, which requires some construction as to whether any

5   given document references John Doe's cooperation with the

6   government and whether the jurisdiction with respect to

7   sealing or unsealing is limited to that explicit limitation

8   which is a matter of to consider.

9            There are a lot of things if that order is to be

10  complied with as I understand it, a limitation having been

11  imposes by the Second Circuit.  There are lots of documents

12  which make docket entries or underlying documents that do not

13  refer to John Doe's cooperation with the government.  It may

14  be a proper interpretation of that order is no justification

15  for their remaining to be sealed.

16           The whole sealing issue arose only because when

17  Mr. Doe, when Jonathan Sach first filed that action, he filed

18  it under seal and then I didn't know, I didn't recall but I

19  had no doubt there was an order that I must have issued in

20  some form under some circumstances and when you turned it up,

21  where did you find that minute entry, that day sheet?  I had

22  no knowledge it ever existed which is why I made that

23  statement on the record at one point.  I couldn't find any

24  order directing that anything be sealed.

25           Interestingly enough, given 30 years of having

Case 1:15-cv-01245-VJW Document 41-1 Filed 07/24/23 Page 17 of 25
Case 1:15-cv-01245-VJW Document 41-1 Filed 07/24/23 Page 17 of 25: 4073

17

1  responded and said "so ordered" I don't know how many times,

2  at the end of the plea, except you forgot to make that request

3  at the sentencing, the government or defense counsel always

4  says "Judge, I would like to make an application that this

5  proceeding be sealed," and invariably I would say "so

6  ordered," and I would generally add "I suppose you want a

7  caveat to be made that a copy of the transcript may be made

8  available to either party upon request?" Everybody nods and I

9  say "so ordered."

10         That's precisely what happened because that day

11 sheet clearly indicates case sealed, transcript sealed and I

12 understand questionably said "so ordered." Otherwise it

13 wouldn't have said sealed.  That's why it happened, that order

14 back then, but I had no clue that that piece of paper was

15 around.  Louise Schillat hasn't been around here for years.

16 We found court papers, documents filed up in the corner of the

17 office that she would have occupied had she still been here

18 which is one of the reasons I discharged her.  That's neither

19 here nor there.

20         In any event, where did you find that piece of

21 paper?

22         MR. KAMINSKY:  Your Honor, Augie found it.

23         THE COURT:  All that having been said, Mr. Beys,

24 you can prepare, you will prepare a response to the

25 government's view as to what they believe no longer need be

SS      OCR      CM      CRR      CSR

1   sealed and you can make your case for the position which

2   you've advocated and I'll deal with it.

3            MR. KAMINSKY:   I don't know what your universe of

4   documents you have is.  Do you think it makes sense for both

5   of us with the court copy, the official lined-up copy to have

6   that in here, have us go through that so we're all on the same

7   page with what's what?

8            THE COURT:   Absolutely.  That's what I contemplated

9   happening here when I called both of you in.

10           MR. KAMINSKY:   I've gone through everything here.

11  I have a stack of what should be unsealed, what shouldn't be,

12  but I think, so we're all working with the same thing, it may

13  make sense to do it here with the court's copy.

14           THE COURT:   Do you have copies, court copies?  I

15  think Augie provided copies.

16           MR. KAMINSKY:   He did.  It only goes through what I

17  asked for.  If certain things were filed subsequent to that, I

18  may not have them.  I do have everything referencing.

19           THE COURT:   I believe he made copies of everything

20  he was able to find that was sealed.  I've checked with him.

21  I have maybe two big folders of the documents which he copied,

22  took out of the vault which are the documents we have to go

23  through for me to make some intelligent determination whether

24  sealing is appropriate.

25           MR. BEYS:   May Mr. Doe be heard?

SS        OCR        CM        CRR        CSR

Case 1:15-cv-01245-VJW Document 41-1 Filed 07/24/23 Page 19 of 25
Case 1:15-cv-01245-VJW Document 46 Filed 12/05/19 Page 19 of 25 4075

19

1          THE COURT:  By all means.

2          MR. DOE:  Thank you very much.  I've been before

3     your Honor for many years in this courtroom.  I understand

4     there is a legal issue and there's my desire or fear, things

5     of that nature.  There's a balance between what the public's

6     right to know and what my right is to try to stop it.

7               With all due respect to the government, always had a

8     wonderful working relationship as opposed to being

9     adversarial.  Mr. Kaminsky and I had a meeting with the FBI

10    agent, a different matter two months ago.  I could take the

11    position I don't need to help the government with anything, I

12    completed what I was supposed to do.  That's not my position.

13              I have tried very hard to change my life around,

14    very hard, and I have.

15              Your Honor, the documents were stolen.  That is a

16    fact.  Josh Bernstein was told to create a backup.  He took it

17    home with him.  We asked him to return it.  He didn't.  The

18    attorney that we're speaking about, speaking of Mr. Roe, told

19    Kelly Moore and Ms. Moore said that to you as well, he told

20    her straight away we're not interested in going after Felix.

21    We know he doesn't have any money.  We're going after the

22    lawyers' insurance companies.

23              It's a travesty of justice in this case.  I'm not

24    sure who is the racketeering in this situation.  This is

25    clearly racketeering by this guy.

Case 1:15-cv-01345-VM Document 246 Filed 12/05/18 Page 20 of 25 4076

1      They had the case dismissed in a Delaware action.  I

2  believe, everybody believes once this gets to Judge Buchwald,

3  I think it's going to be dismissed on 10 different reasons and

4  Mr. Beys has told me so, Kelly Moore has told me so.  They do

5  not have a real legitimate reason to want these documents

6  other than to besmirch members of your profession.

7      They accuse me of conspiring with Nixon Peabody.

8  Your Honor, before God, before you, everybody in this room, I

9  swear to you on my children, there's not one iota of truth in

10  any allegation they're saying.  It does not involve any type

11  of scheme of any sort.  I promise you that and I give you my

12  word.  The government has known that I've always been honest.

13  In 10 or 12 years I've never lied about anything.

14      I believe this issue more or less goes away if

15  they're given a chance to file the lawsuit which will be

16  dismissed in 15 seconds.

17      It is one thing for somebody to assume, for Danny

18  Persico to assume I may or may not have cooperated.  There's

19  this article but what's going on, can't tell, sort of gray

20  area.  It's my own fault for associating with these people in

21  the first place.  I cannot blame 91, but when I started, my

22  oldest daughter was in kindergarten.  God willing, tomorrow

23  I'm taking her for a college interview, going away to college.

24  It's many many years.  That being said, these people do not

25  kid around.

1    Do I believe if something is unsealed tomorrow, that

2    tomorrow Danny Persico is going to kill me?  I believe they

3    will find out about it and I believe I could go visit my

4    grandmother who is in Brighton Beach, just walking to my car,

5    somebody says Ah, let's get this guy, as easy as that.  For

6    these people, it doesn't count for anything, a human life

7    doesn't matter.  It's part of their life to kill people.

8    This court has been fantastic to me.  The sentence

9    your Honor gave me, if you remember, my rabbi was in the room,

10   he almost cried.  You have done fantastic for me.  The

11   government has done wonderful for me.

12   I tried very hard.  If there's any way for as much

13   of it to remain sealed as possible, I spent half a million

14   dollars in legal costs in this issue because I believe my life

15   is in danger, because my life would be in shambles, I would be

16   looking over my shoulder.

17   The Second Circuit basically said the issue is a

18   threat to my life and the government has said it's a threat to

19   my life.  Your Honor has said it's a threat to my life.  That

20   has not changed.  That really has not changed in any way.

21   Of course, a substitution of counsel is something

22   that's not going to say oh, he cooperated against us, but your

23   Honor, 20 adjournments?  I think anybody with half an

24   understanding of the criminal system and these guys have an

25   understanding of the criminal system because they're always in

1    the system, you get 20 adjournments over a 10 or 12 year

2    period, you're cooperating.  There's no rhyme or reason.  In

3    fact, such a long time, it's almost a given.

4          I have spent my life savings at this point trying to

5    stop this from being opened and not being opened for a

6    legitimate reason but outright extortion what these people are

7    doing, they're trying to extort Peabody.  Is there any doubt I

8    conspired with five of the top law firms to defraud somebody?

9    It's a joke.

10         I ask, I beg for the government and to try to be --

11   to try to keep as much sealed as possible.

12               THE COURT:   Thank you.

13               MR. DOE:   Thank you for hearing me.

14         There's nothing further for us to do here this

15   afternoon.

16         You said something at the very end, Mr. Kaminsky,

17   about a little more time to resolve some other possibility of

18   a relationship with Mr. Doe?

19               MR. KAMINSKY:   That's correct.

20               THE COURT:  May impact upon this motion of yours?

21               MR. KAMINSKY:   That's correct.

22               THE COURT:   Be a little more specific if you can be

23   in terms of time.  I don't need any details.

24               MR. KAMINSKY:   I think within a week we'll know.

25               THE COURT:   You said something about 5:00 o'clock.

SS       OCR       CM       CRR       CSR

1   What was that all about?

2          MR. KAMINSKY:   I was just saying if your Honor was

3   going to unseal something before 5:00 o'clock today, we ask it

4   be delayed.

5          THE COURT:   I'm not unsealing anything until I've

6   given you an opportunity to be heard.  That's the whole

7   purpose of getting you here.

8          MR. KAMINSKY:   I assume it doesn't have to be on

9   the record or official or on the calendar, but Mr. Beys and I

10  may may call Ms. Francis, the courtroom deputy, to schedule a

11  time where both of us and the documents could be present in

12  the same place, preferably in this courtroom?

13         THE COURT:  Yes.  The calendar today indicates John

14  Doe, status conference. The docket number is also indicated on

15  the calendar?  I don't know if it's necessary.  It's an

16  interesting issue what docketing is all about which we'll have

17  to deal with as a further basis.

18         This transcript is sealed, Mr. Silverman.  There's

19  no caveat that I'm being asked for but if there is a caveat,

20  you can make your application and I'll so order that as well.

21         MR. BEYS:   Nothing from John Doe, thank you.

22         MR. KAMINSKY:   I do have a quick scheduling issue.

23  For all the parties in the room, I will be out of the country

24  for an extended period from May 13 through Memorial Day.

25  Obviously, there will be others in my office that would be

1   able to deal with an issue, if one were to arise.  If there is

2   anything that your Honor would need to discuss, it's obviously

3   my preference since I'm the most familiar with these

4   documents; that we would meet before the 13th or after

5   Memorial Day.

6              THE COURT:   When is Memorial Day?

7              MR. KAMINSKY:   The 30th.  I'm back the following

8   day.

9              THE COURT:   Let's fix another date.  You'll

10  prepearewhatever it is I suggest you'll prepare?

11             MR. BEYS:   Yes.

12             THE COURT:   How much time do you think you'll need?

13             MR. BEYS:   Two to three weeks.

14             THE COURT:   By all means.  There's no great urgency

15  about it.  I think the last letter I got from Mr. Lerner

16  insisting that be sealed.

17             MR. BEYS:   A demand.

18             THE COURT:   No, it wasn't a demand, just a request.

19             MR. KAMINSKY:   Now thatthe government has filed

20  it's appelate submission, there's no rush for anything to be

21  resolved.

22             THE COURT:   Thank you very much.

23             MR. BEYS:   We prefer for it to be in early June.

24             THE COURT:   Let me have the first week in early

25  June.  Is that okay for you?

1          MR. KAMINSKY:   Yes, your Honor.  Hopefully before

2   that date, Mr. Beys and I could develop a thorough

3   understanding of each document and our positions on each.

4          THE COURT:   If you need me for that purpose, I

5   think I may have a couple of folders of documents in my

6   chambers.  You may have the same copies that Augie provided.

7          MR. KAMINSKY:   Other than the 1st of June, I'm

8   available.

9          THE CLERK:  How about the 3rd at noon?

10          MR. KAMINSKY:   That's fine with us.

11          MR. BEYS:   The third at noon.

12          THE COURT:   Thank you.

13

14

15

16

17

18

19

20

21

22

23

24

25